**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PROVIDENCE HALL ASSOCIATES | ) | Case No. 11-11656-BFK |
|   LIMITED PARTNERSHIP, | ) | Chapter 11 |
| | ) | |
|       Debtor. | ) | |
| _____ | ) | |
| PROVIDENCE HALL ASSOCIATES | ) | |
|   LIMITED PARTNERSHIP, | ) | |
| | ) | |
|       Plaintiff, | ) | |
| v. | ) | Adversary Proceeding |
| | ) | No. 18-01013-BFK |
| MARC E. ALBERT, | ) | |
| | ) | |
|       Defendant. | ) | |

**REPORT AND RECOMMENDATION**
**TO THE DISTRICT COURT RECOMMENDING**
**DISMISSAL OF THE PLAINTIFF'S COMPLAINT**

This matter comes before the Court on the Defendant's Motion to Dismiss the Plaintiff's

Complaint pursuant to Bankruptcy Rule 7012 (incorporating F.R. Civ. Pro. 12(b)(1) and

12(b)(6)). Adv. Docket No. 12.[1] The Plaintiff filed an Opposition to the Motion. Adv. Docket

No. 30. The Defendant filed a Reply Memorandum. Adv. Docket No. 31. The Court heard the

arguments of the parties on October 30, 2018. For the reasons stated below, the Court

recommends to the District Court that the Complaint be dismissed.

**Uncontested Facts**

The Court finds that the following facts are not genuinely contested.

---

[1] Unless otherwise noted, docket entries in the main bankruptcy case will be referred to as Docket No. ___, while docket entries in the current adversary proceeding will be referred to as Adv. Docket No. ___.

A. *Providence Hall Associates (PHA) Files for Bankruptcy.*

1.      On March 9, 2011, Providence Hall Associates (PHA) filed a Voluntary Petition under Chapter 11 with this Court. Case No. 11-11656-BFK. The case initially was assigned to Bankruptcy Judge Stephen S. Mitchell. Judge Mitchell retired and the case was assigned to the undersigned Bankruptcy Judge on September 1, 2011. Docket No. 134.

2.      PHA initially was represented by David Ludwig of the law firm of Dunlap, Grubb & Weaver, PLLC. The Court approved Mr. Ludwig's employment as counsel for the Debtor in Possession on April 20, 2011. Docket No. 26.

3.      Victor Guerrero, PHA's Manager, was appointed as the Debtor Designee in the case. Docket No. 8.

4.      At the time that it filed its Petition, PHA owned four properties: (a) a strip shopping center on Nolensville Pike in Nashville, TN; (b) a video store in Alcoa, TN; (c) a 7-11 store in Daytona Beach, FL; and (d) a shopping center with Food Lion as its anchor tenant in Dickson, TN. Docket No. 1, Schedule A. The last property, the Food Lion property, was stated as having been "held by Dickson, LLC." *Id.*[2]

5.      PHA listed Wells Fargo as having a lien on all of the properties on Schedule A in the amount of $2,185,954.74. *Id.*, Schedule D. It also listed Wachovia Loan Services as having a "Home Equity Loan," with a lien against all of the properties on Schedule A in the amount of $497,898.91. *Id.* Neither the Wells Fargo loan, nor the Wachovia loan was listed as contingent, unliquidated or disputed. *Id.*

---

[2] Dickson Properties, LLC, which was wholly-owned by PHA, filed a Voluntary Petition under Chapter 11 with this Court on December 1, 2011. Case No. 11-18617-BFK. Dickson was represented by Gary Bowman. In its Schedules, Dickson listed no real property, but stated that it had a preference claim against PHA for $950,000.00. Docket No. 12, Schedules A and B.

6.      In May 2011, PHA filed a Motion to Sell the Nolensville Pike property. Docket

No. 33. The Motion recited the fact that the property was encumbered by the Wells Fargo lien in

the original amount of $2,500,000.00 and the Wachovia lien (to which Wells Fargo succeeded,

when it merged with Wachovia) in the original amount of $500,000.00. *Id*., ¶ 6. The Motion

asserted that Wells Fargo would be paid the sum of $1,118,000.00 at closing and that Wells

Fargo consented to the sale. *Id*., ¶ 12. The Motion further noted: "The Debtor's indebtedness to

WFB [Wells Fargo Bank, N.A.], including the indebtedness arising from early termination of the

Swap Agreement, exceeds the value of the Property." *Id*., ¶ 7.

7.      The Court granted the Motion to Sell on June 27, 2011. Docket No. 74.

B.   *PHA Files an Adversary Proceeding Against Wells Fargo.*

8.      On September 2, 2011, PHA filed a Complaint against Wells Fargo in this Court.

Adv. Pro. No. 11-01508-BFK. The Complaint alleged that Wells Fargo had breached its

covenant of good faith and fair dealing and/or committed constructive fraud against the PHA.

9.      Wells Fargo filed a Motion to Dismiss. *Id*., Docket No. 7.

10.     PHA filed an Amended Complaint. *Id*., Docket No. 9. Wells Fargo moved to

dismiss the Amended Complaint. *Id*., Docket No. 11.

11.     On October 24, 2011, PHA filed a Motion to Substitute Gary Bowman as its

counsel in the adversary proceeding for Mr. Ludwig, who had filed the Complaint and the

Amended Complaint. *Id*., Docket No. 15. Wells Fargo objected to the Motion to Substitute. *Id*.,

Docket No. 18. Mr. Ludwig filed a Motion to Withdraw as Counsel. *Id.,* Docket No. 19.

12.     The Court granted the Motion to Substitute, but it appears that no Order was ever

submitted to the Court reflecting that ruling. *Id.,* Docket No. 25.

C. *The Court Appoints Mr. Albert as Chapter 11 Trustee.*

13.    On May 26, 2011, about two months into the case, the U.S. Trustee filed a Motion

to Convert or Dismiss. Docket No. 37.

14.    Wells Fargo filed a Response supporting the U.S. Trustee's Motion. Docket No.

82.

15.    PHA filed an Objection to the Motion. Docket No. 87.

16.    Wells Fargo filed its own Motion to Dismiss on September 15, 2011. Docket No.

155.

17.    Mr. Bowman entered his appearance in PHA's bankruptcy case on behalf of

Dickson Properties on September 28, 2011. Docket No. 162.

18.    Mr. Bowman filed a Response to Wells Fargo's Motion to Dismiss on behalf of

PHA on October 13, 2011. Docket No. 166.

19.    On October 13, 2011, Susan Ford, a creditor, who purported to be acting as the

assignee of Mark Herring (who later was elected as Attorney General of the Commonwealth of

Virginia), a creditor, filed a Consent Motion for Relief from the Automatic Stay. Docket No.

167. The Consent Motion would have granted Ms. Ford leave to file a fraudulent transfer action

in State Court against PHA for the recovery of the Food Lion property in Dickson, TN that was

transferred from Dickson Properties by way of a Quitclaim Deed. *Id.*

20.    Mr. Bowman filed an Application to be employed as counsel for PHA on October

14, 2011, despite having entered his appearance in the PHA case on behalf of Dickson

Properties, the allegedly fraudulent transferor of property to PHA. Docket No. 171.

21.     In light of the pending Consent Motion for Relief from the Automatic Stay, the

Court issued an Order requiring Mr. Bowman to supplement his Employment Application.

Docket No. 174.

22.     On October 25, 2011, Ms. Ford withdrew her Consent Motion. Docket No. 182.

23.     On October 31, 2011, the Court ordered the appointment of a Chapter 11 Trustee.

Docket No. 184.

24.     Shortly thereafter, Mr. Ludwig filed a Motion to Withdraw as PHA's counsel.

Docket No. 188. The Court granted Mr. Ludwig's Motion on November 23, 2011. Docket No.

201.

25.     The Court also denied Mr. Bowman's Application for Employment, after finding

that: "(1) in light of this Court's order of October 31, 2011, directing the United States Trustee to

appoint a chapter 11 trustee, the Debtor does not have the ability to employ counsel under 11

U.S.C. § 327(a); and (2) owing to Mr. Bowman's representation of the Dickson Properties

L.L.C., Mr. Bowman is not disinterested under 11 U.S.C. §§ 327(a) and 101(14)." Docket No.

198.

26.     The U.S. Trustee filed an Appointment of Mr. Albert as Chapter 11 Trustee and a

Motion to Approve his appointment. Docket Nos. 195, 196. The Court granted the Motion to

Approve on November 23, 2011. Docket No. 199.

27.     The Court also granted the Chapter 11 Trustee's Motion to approve the

employment of his law firm, Stinson Morrison Hecker, LLP. Docket Nos. 205 (Application to

Employ), 206 (Order Granting).

28.     On December 14, 2011, Wells Fargo and Mr. Albert filed a Joint Motion to Stay

the adversary proceeding, to allow Mr. Albert to review the matter and to determine whether he

wanted to pursue the case. Adv. Pro. 11-01508-BFK, Docket No. 30. The Court entered an Order

granting the Joint Motion to Stay on December 19, 2011. *Id*., Docket No. 32.

29.     Wells Fargo and the Trustee renewed their Joint Motion to Stay in February 2012,

which the Court granted. *Id*., Docket Nos. 35, 37.

30.     On January 31, 2012, Mr. Bowman filed a Motion to Determine the Value of

certain of the Debtor's properties and a Brief in Support on behalf of PHA. Docket Nos. 222,

226.

31.     The Court denied Mr. Bowman's Motion, noting that "once a Chapter 11 Trustee

is appointed, the Chapter 11 Trustee is the sole representative of the estate, and the Debtor has no

ability to employ professionals." Docket No. 227. The Court further advised Mr. Bowman that if

he filed any further pleadings in the name of the Debtor, he would be exposed to sanctions under

11 U.S.C. § 105(a) and the Court's inherent powers. *Id*.[3]

32.     On May 22, 2012, the Trustee filed a Motion to Employ Stephen H. Marcus and

Mr. Marcus's law firm as special litigation counsel to advise the Trustee on the viability of the

adversary proceeding against Wells Fargo. Docket No. 267. The Court approved this Application

on June 1, 2012. Docket No. 277.

---

[3]  Mr. Bowman later filed a Disclosure Statement and Plan on behalf of Victor Guerrero, the indirect equity security holder of PHA, and Susan Ford, a creditor in the case. Docket Nos. 242, 243. He withdrew the Disclosure Statement in open court on May 1, 2012. Docket No. 256. He represented Mr. Guerrero in an adversary proceeding filed by the Trustee (No. 12-01101-BFK), and he represented Ms. Ford in a separate adversary proceeding filed by the Trustee (No. 12-01102-BFK). Later in the case, after the U.S. Trustee filed a Motion for Sanctions in the Dickson Properties case (Case No. 11-18617-BFK, Docket No. 45), the Court sanctioned Mr. Bowman. Docket Nos. 280 (Memorandum Opinion), 281 (Order).

D. *The Court Dismisses the Debtor's Lawsuit Against Wells Fargo Without Prejudice.*

33.     On June 15, 2012, the Court entered a Consent Order dismissing the adversary proceeding against Wells Fargo without prejudice. The Trustee consented to the entry of the Order. Adv. Pro. 11-01508-BFK, Docket No. 41.

E. *The Court Approves the Sale of the Two Properties.*

34.     On May 8, 2012, the Trustee filed a Motion to Sell the Dickson, TN, Food Lion property. Docket No. 260. The Trustee later withdrew this Motion. Docket No. 276.

35.     The Trustee filed a Motion to Sell the Florida 7-11 property on May 29, 2012. Docket No. 272.

36.     The Court approved the sale of the Florida property by Order entered July 17, 2012. Docket No. 315.

37.     Mr. Guerrero did not object to the Motion to Sell the Florida property. The Order approving the sale, however, recited the following:

> Victor Guerrero also appeared at the hearing on June 26, 2012, without counsel, and advised the Court that he was in the process of retaining counsel and obtaining financing so that he could bid on the 7-Eleven Property. Based upon Mr. Guerrero's representation, and over the objection of the Trustee, WFB, and CRA, the Court continued the hearing on the Sale Motion and the auction for the 7-Eleven Property to July 11, 2012 at 9:30 a.m. Mr. Guerrero did not qualify as a bidder as required in this Court's July 2, 2012 Order Granting In Part the Trustee's Motion for an Order Approving Bid Procedures and Break-Up Fee in Connection with Proposed Sale of Real Property Out of the Ordinary Course of Business ("Bid Procedures Order"). Mr. Guerrero contacted the Trustee prior to the July 11, 2012 auction and advised the Trustee that he did not intend to participate as a bidder nor would he contest the auction going forward on July 11, 2012.

*Id.*, p. 2.

38.     The Trustee filed a Report of Sale indicating that the sale of the Florida property closed on August 24, 2012, and that Wells Fargo was paid $1,597,988.45 in satisfaction of its lien. Docket No. 340.

39.     On August 10, 2012, the Trustee filed a Second Motion to Sell the Food Lion property in Dickson, TN. Docket No. 336.

40.     The Court granted the Trustee's Second Motion to Sell the Dickson property on September 14, 2012. Docket No. 349. There were no objections to this sale.

41.     The Trustee filed a Report of Sale on October 10, 2012, indicating that the sale closed on October 1, 2012, and that Wells Fargo was paid $540,164.18, in full satisfaction of its lien. Docket No. 353.

F.   *The Bankruptcy Case is Dismissed.*

42.     On November 13, 2012, Mr. Guerrero filed a Motion to Dismiss the PHA case through his attorney Christopher Rogan. Docket No. 373.

43.     After the Court entered a series of Orders awarding compensation to the Trustee (Docket No. 388), the Trustee's law firm (Docket No. 385), and other parties (Docket Nos. 386, 387), the Court entered a Consent Order Granting Motion to Dismiss the PHA case on December 7, 2012. Docket No. 389.

44.     After the Trustee filed certain required Monthly Operating Reports (Docket Nos. 397, 398), the case was administratively closed by the Clerk on December 27, 2012. Docket No. 400.

G.   *PHA Files a Lawsuit Against Wells Fargo in State Court.*

45.     On February 28, 2014, PHA filed a lawsuit against Wells Fargo for lender liability in the Circuit Court of Loudoun County, by its attorney Mr. Bowman. Law No. 86453.

46.     Wells Fargo removed the case to the U.S. District Court for the Eastern District of Virginia. Case No. 1:14-cv-00352-LO-IDD.

47.     Wells Fargo filed a Motion to Dismiss. *Id*., Docket Nos. 7, 8.

48.     On May 20, 2014, District Judge O'Grady granted Wells Fargo's Motion to

Dismiss, holding that the Orders approving the sales of the two properties were res judicata of

PHA's lender liability claims. *Id.,* Docket No. 21.

49.     PHA appealed. On December 8, 2015, the Fourth Circuit Court of Appeals

affirmed Judge O'Grady's decision in a published opinion. *Providence Hall Associates v. Wells*

*Fargo Bank, N.A.,* 816 F.3d 273 (4th Cir. 2016).

50.     In its Opinion, the Fourth Circuit held:

The key questions thus arise: if PHA did not owe the amount that Wells Fargo claimed it
was due, why would the trustee—the bankruptcy estate's representative—move to sell
estate assets in full satisfaction of Wells Fargo's claimed debt, and why would the
bankruptcy court approve the sale? The motions to sell in this case effectively conceded
the validity of PHA's obligations to Wells Fargo, and the proceeds of the sales satisfied
those obligations. It would make little sense after the sales were made, the debt settled,
and the bankruptcy proceeding closed, to then allow PHA to challenge in a new judicial
proceeding the propriety of the transactions giving rise to its now-extinguished debt. To
allow such a challenge would achieve little more than upending the purpose of res
judicata: promoting finality and judicial economy. *Montana v. United States*, 440 U.S.
147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see also Winget,* 537 F.3d at 578–79;
*Baudoin*, 981 F.2d at 739–40.

Furthermore, the preclusive effect of the bankruptcy court's sale orders is consistent with
the "fundamental purpose" of Chapter 11 bankruptcy: "rehabilitation of the debtor."
*Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co., L.L.C.),* 403 F.3d 164,
170 (4th Cir.2005) (quoting *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528, 104 S.Ct.
1188, 79 L.Ed.2d 482 (1983)). To fulfill this objective, "[c]entralization of disputes
concerning a debtor's legal obligations is especially critical" because it allows
"reorganization [to] proceed efficiently, unimpeded by uncoordinated proceedings in
other arenas." *Id.* (quoting *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs,
Inc.),* 922 F.2d 984, 989 (2d Cir.1990)). Allowing "piecemeal litigation" as PHA urges,
after all the debts and dust of a bankruptcy have settled, would invite precisely the
inefficient decentralized proceedings that Chapter 11 bankruptcy is designed to avoid.
*See id.*

Id., at 279-280.[4]

_____

[4]  Dickson Properties filed a similar lawsuit against Wells Fargo in the Western District of Virginia, through its
attorney Mr. Bowman. *Dickson Properties, LLC v. Wells Fargo Bank*, N.A., Civil No. 7:16-cv-527. On September
28, 2017, District Judge Dillon dismissed the action, also on res judicata grounds. 2017 WL 4322451 (W.D. Va.
2017). Dickson Properties appealed, but PHA represents in this action that Dickson Properties settled with Wells

H. *PHA Files the Sleeper Suit Against the Trustee in State Court.*

51.     On December 29, 2014 (a Monday), PHA filed a lawsuit against the Trustee in the Circuit Court of Loudoun County. Case No. CL00091679.

52.     PHA never served the Trustee with this lawsuit. Rather, PHA non-suited the case on March 30, 2017.[5]

I. *PHA Files the Instant Action Against the Trustee.*

53.     PHA filed this lawsuit against the Trustee on September 8, 2017. Adv. Docket No. 1, Ex. 1 (Summons and Complaint).

54.     The Trustee removed the action to this Court on February 12, 2018. Adv. Docket No. 1.

55.     PHA filed a Motion to Withdraw the Reference of this action to the U.S. District Court for this District. Adv. Docket No. 10.

56.     Judge O'Grady of the District Court denied PHA's Motion to Withdraw the Reference on August 30, 2018. Civil No. 1:18-cv-00523-LO-TCB, Docket No. 4.

57.     PHA moved for leave to file an interlocutory appeal of Judge O'Grady's Order, which Judge O'Grady denied on October 29, 2018. *Id.*, Docket No. 11.

---

Fargo while the case was on appeal. The appeal was dismissed voluntarily. *Dickson Properties, LLC v. Wells Fargo Bank, N.A.,* 2018 WL 4896759 (4th Cir. 2018).

[5]  Virginia law allows one nonsuit, or a dismissal without prejudice, of right. Va. Code § 8.01-380. If the initial action is timely filed, the statute of limitations is extended for an additional six months after entry of the nonsuit Order. Va. Code § 8.01-229(E)(3). Where a lawsuit is filed, not served and later non-suited, it is colloquially known as a "sleeper suit" in Virginia.

10

## Conclusions of Law

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334 and the Order of Reference entered by the U.S. District Court for this District on August 15, 1984.

### I.      Whether the Plaintiff's Claims Are Core or Non-Core.

The threshold question is whether the claims in the Plaintiff's Complaint are core or non-core. If they are core claims, this Court can hear and determine them (subject to the Plaintiff's *Stern* objection, discussed below). 28 U.S.C. § 157(b)(1). If they are non-core claims, and the parties do not consent (and PHA makes it clear that it does not consent), then the Court is required to make a report and recommendation to the District Court, which will review this Court's recommendations de novo. 28 U.S.C. § 157(c)(1). The parties disagree on whether PHA's claims are core or non-core claims. PHA asserts its claims are non-core; the Trustee argues that they are core claims.

The analysis here involves two separate questions. First, are the claims core claims? And second, whether the Supreme Court's decision in *Stern v. Marshall* requires the Court to submit a report and recommendation to the District Court because, although the claims may be core, the bankruptcy court may not render a final decision.

### A.   The Court Concludes that PHA's Claims Are Core Claims.

The Plaintiff's Complaint alleges that the Trustee was negligent, and breached his fiduciary duty, by failing to preserve the bankruptcy estate's claims against Wells Fargo when the Trustee sold the properties in Florida and Tennessee, and paid Wells Fargo on its secured claims. *See* Complaint, ¶¶ 57 ("Albert took no action to investigate the A.P. or WFB's other rights of action"), 59 ("Albert proceeded with the single-minded and sole purpose and intention of liquidating PHA's property so that he could immediately accumulate money to pay his

trustee's commission and his law firm"), 63 ("Albert did not disclose to the court or to any

parties in interest that the entry of the Sale Orders would extinguish PHA's objections to WFB's

claim and render PHA's rights against WFB barred by res judicata.")[6]

Core proceedings involve claims that would have no existence outside of a bankruptcy

case. *Valley Historic Ltd. Partnership v. Bank of New York,* 486 F.3d 831 (4th Cir. 2007); *Grausz*

*v. Englander,* 321 F.3d 467, 471 (4th Cir. 2003). The statutory definition of core proceedings

includes "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). Claims

against estate professionals for their conduct in administering assets of the bankruptcy estate

generally are considered to be core proceedings. *Capitol Hill Group v. Pillsbury, Winthrop,*

*Shaw, Pittman, LLC,* 569 F.3d 485 (D.C. Cir. 2009) ("we agree with our sister circuits that

malpractice claims against court-appointed professionals stemming from services provided in the

bankruptcy proceeding are 'inseparable from the bankruptcy context…' and 'constitute ... a

proceeding 'arising in' the bankruptcy'"); *Grausz v. Englander,* 321 F.3d 467, 471 (4th Cir.

2003) (malpractice claim against estate's legal professionals); *Southmark Corp. v. Coopers &*

*Lybrand (In re Southmark Corp.),* 163 F.3d 925, 930 (5th Cir. 1999) (malpractice claims against

bankruptcy estate's accounting firm); *Walsh v. Northwestern National Insurance Co. of*

*Milwaukee, Wisconsin (In re Ferrante),* 51 F.3d 1473, 1476 (9th Cir. 1995); *In re Coastal*

*Plains, Inc.*, 326 B.R. 102 (Bankr. N.D. Tex. 2005) (removed action against Trustee for

negligence and breach of fiduciary duty was a core proceeding). PHA argues that its claims are

non-core "because PHA's estate was closed, and the trustee discharged, on December 27, 2012."

---

[6] The Court accepts as true all well-pleaded facts in the Complaint, but is not required to accept allegations that are
legal conclusions. *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012) ("[A]lthough a court must accept as true
all factual allegations contained in a complaint, such deference is not accorded to legal conclusions stated therein.
The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to
survive a motion made pursuant to Rule 12(b)(6).") (citing *Iqbal*, 556 U.S. at 678) (citations omitted).

Docket No. 30, PHA Opposition, p. 8, fn. 2. The fact that the underlying bankruptcy case has been closed, however, does not determine the matter. The claims arose out of the Trustee's conduct during the course of the case, while the case was still open.

In this case, the Plaintiff's claims would not exist but for the bankruptcy case. Mr. Albert was appointed by this Court as the Chapter 11 Trustee for the PHA bankruptcy estate. The Court approved the sales of the Florida and Tennessee properties, and approved the payments in satisfaction of Wells Fargo's liens, all of which gave rise to the PHA's claims against the Trustee. Although PHA argues that its claims are grounded in State law (negligence and breach of fiduciary duty), the statute itself instructs: "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3). Objections to proof of claim, for example, often depend on the resolution of State law issues (e.g., statutes of limitations, usury and the like), but they are inarguably core claims. § 28 U.S.C. § 157(b)(2)(B).

The Court finds that PHA's claims are core claims.

B. *Does Stern v. Marshall Require a Report and Recommendation*
   *To the District Court?*

PHA argues that even if its claims can be considered to be core claims, this Court is precluded from entering a final judgment under the Supreme Court's decision in *Stern v. Marshall,* 564 U.S. 462 (2011).[7] The *Stern* case involved a counterclaim filed by the Debtor (Vickie Lynn Marshall) against her late husband's brother (E. Pierce Marshall), who had filed a

---

[7] PHA argues that the Court is required to issue a report and recommendation because it is entitled to a jury trial on its claims. Whether or not this Court is required to issue a report and recommendation to the District Court is a different issue from whether PHA is entitled a jury trial. The Court will assume that PHA is entitled to a jury trial. If, however, this Court dismisses PHA's claims at the pleading stage, this would be no more of an infringement on PHA's right to a jury trial than if the District Court were to dismiss PHA's Complaint pursuant to Rule 12(b)(1) or 12(b)(6), which is to say no infringement at all.

Section 523 non-dischargeability complaint against Ms. Marshall in the bankruptcy court. The

Supreme Court held that, notwithstanding the fact that the statute included counterclaims by the

estate against third parties as core proceedings (28 U.S.C. § 157(b)(2)(C)), the counterclaim

could not constitutionally be adjudicated by the Article I bankruptcy court. *Id*., at 482

("Although we conclude that § 157(b)(2)(C) permits the Bankruptcy Court to enter final

judgment on Vickie's counterclaim, Article III of the Constitution does not.")

     *Stern* is arguably distinguishable because the facts in *Stern* involved a counterclaim filed

by the Debtor as the representative of the bankruptcy estate against a creditor. Here, PHA as the

former Debtor, brings an action against the bankruptcy trustee, who was the representative of the

bankruptcy estate. The answer is not entirely clear. In *In re KSL Media, Inc*., 2016 WL 74385

(C.D. Cal. Jan. 6, 2016), the District Court denied a motion to withdraw the reference filed by

the Defendants, who were legal professionals to the estate and had been sued by the Chapter 7

Trustee for legal malpractice, breach of fiduciary duty and related claims (just as the District

Court denied PHA's Motion to Withdraw the Reference in this action). The District Court found

that the Trustee's claims were core claims. The court further rejected the argument that *Stern*

changed the analysis, finding that *Stern's* reach was a "limited one." *Id*., at *7, citing *In re Deitz*,

760 F.3d 1038, 1044 (9th Cir. 2014).

     Shortly after *Stern* was decided, though, the District Court for this District rejected the

"narrow" reading of *Stern*, holding that *Stern*, together with *Granfinciera*, 492 U.S. 33 (1989),

"clearly supports the conclusion that the authority to issue a final decision in a fraudulent

conveyance action is reserved for Article III courts." *McCarthy v. Wells (In re El–Atari),* 2011

WL 5828013, at *3 (E.D. Va. Nov. 18, 2011). This view has been described as the "broad" view

of *Stern*, meaning that *Stern* is not limited to its facts, nor just to Section 157(b)(2)(C) of Title

28. *See, e.g., Albert v. Site Management, Inc.,* 506 B.R. 453, 458 (D. Md. 2014) ("Some courts

view the decision as narrow, pointing to the Court's admonition that the decision 'does not

change all that much,' because the "question presented here is a narrow one….' Other courts—

including one in this district—have applied *Stern* broadly, focusing on the decision's concerns

over maintaining the Constitution's separation of powers," (citing *el-Atari* for the broad view));

*In re Southeastern Materials, Inc.,* 467 B.R. 337, 363, 365 (Bankr. M.D. N.C. 2012)

("Bankruptcy courts may not enter final orders in fraudulent conveyance actions, at least where

the defendant has not filed a proof of claim [citing *el-Atari*]…. The Court realizes that there are

well-reasoned opinions that have reached the opposite conclusion, adopting what has been called

the 'narrow view.'")

Given that the District Court in *el-Atari* adopted the broad view of *Stern*, while also

holding that this Court could issue proposed findings of fact and recommendations, this Court

will not enter a final judgment in this matter. Rather, the Court will issue this Report and

Recommendation to the District Court.

## II.    The Barton Doctrine Compels the Dismissal of this Action.

In *McDaniel v. Blust*, 668 F.3d 153 (4th Cir. 2012), the Fourth Circuit reaffirmed the

vitality of the *Barton* doctrine in this Circuit. The Fourth Circuit held:

> The Supreme Court established in Barton that before another court may obtain subject-matter jurisdiction over a suit filed against a receiver for acts committed in his official capacity, the plaintiff must obtain leave of the court that appointed the receiver. *See Muratore v. Darr,* 375 F.3d 140, 143 (1st Cir. 2004). This principle has been extended to suits against bankruptcy trustees, *see id.*; *Beck v. Fort James Corp. (In re Crown Vantage, Inc.),* 421 F.3d 963, 971 (9th Cir. 2005), and to suits against trustees' attorneys, *see Lowenbraun v. Canary (In re Lowenbraun),* 453 F.3d 314, 321 (6th Cir. 2006). To determine whether a complained-of act falls under the Barton doctrine, courts consider the nature of the function that the trustee or his counsel was performing during commission of the actions for which liability is sought. *See Heavrin v. Schilling (In re Triple S Rests., Inc.),* 519 F.3d 575, 578 (6th Cir. 2008). When trustees act "within the context" of their role of "recovering assets for the estate," leave must be obtained. *Id.*

Acts are presumed to be part of the duties of the trustee or his counsel "unless Plaintiff initially alleges at the outset facts demonstrating otherwise." *In re Lowenbraun,* 453 F.3d at 322 (internal quotation marks omitted).

The Barton doctrine serves the principle that a bankruptcy trustee "is an officer of the court that appoints him," and therefore that court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties." *Lebovits v. Scheffel (In re Lehal Realty Assocs.),* 101 F.3d 272, 276 (2d Cir. 1996). "Without the requirement [of obtaining leave], trusteeship w[ould] become a more irksome duty, and so it w[ould] be harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums, and this w[ould] make the administration of the bankruptcy laws more expensive." *In re Linton,* 136 F.3d 544, 545 (7th Cir. 1998). The doctrine also enables bankruptcy courts to monitor the work of the trustees they have appointed so that the courts may be fully informed when they make future appointments. *See id.*

*Id.*, at 156-57.

Because the *Barton* doctrine implicates the Court's subject matter jurisdiction, it is addressed under Rule 12(b)(1), rather than under Rule 12(b)(6). Chief Judge St. John of this Court considered the Barton doctrine in *In re Cutright*, 2012 WL 1945703 (Bankr. E.D. Va. May 30, 2012). In *Cutright*, Chief Judge St. John held that "the first hurdle a prospective plaintiff must overcome to obtain leave of court to sue from the appointing court is the establishment of a *prima facie* case against the trustee." *Id.*, at *10. He elaborated on the *prima facie* case requirement:

The prima facie case requirement requires a "pre-screening" of the allegations by the appointing court to determine if the plaintiff can present adequate grounds upon which to proceed against the trustee in another forum. *Id.* at 885. The plaintiff must provide information, by presenting either a "detailed motion or complaint," sufficient to enable the court to determine whether a prima facie case has been established.11 *Id.* It is within the court's discretion to request that the prospective plaintiff to submit a proposed complaint as a supplement if the motion filed is not sufficiently detailed. *Id.*

*Id.*

Surprisingly, PHA has never moved to reopen its bankruptcy case and has never sought this Court's permission to sue the Trustee. PHA's Sleeper Suit and the present action against the Trustee plainly violated the *Barton* doctrine when they were filed.

PHA raises a number of issues in response to the *Barton* doctrine, all of which in the Court's view are unavailing.[8]

### A. Does the Barton Doctrine Apply in Removed Cases?

PHA argues first that the Barton doctrine does not apply because the action was removed to this Court, the Court that appointed Mr. Albert and maintained supervisory control over his actions. PHA's position is supported by the Ninth Circuit's decision in *Harris v. Whitman (In re Harris),* 590 F.3d 730 (9th Cir. 2009). In *Harris*, the Ninth Circuit held that the Barton doctrine "denies subject matter jurisdiction to all forums except the appointing court." *Id*., at 742. When the case was removed to the bankruptcy court, according to the Ninth Circuit, "all problems under the Barton doctrine vanished." *Id.* This rationale was adopted by the bankruptcy court in *Lunan v. Jones (In re Lunan),* 489 B.R. 711, 727-28 (Bankr. E.D. Tenn. 2012).

On the other hand, the *Harris* rationale has been rejected by a number of bankruptcy courts, most notably by the bankruptcy court in *Herrera v. Yvette J. Gonzales, LLC (In re Herrara),* 472 B.R. 839 (Bankr. D. N.M. 2012). The *Herrera* case involved an action that was removed from the State court to the bankruptcy court. Bankruptcy Judge Starzynski held:

> All problems under the *Barton* doctrine do not vanish when the unauthorized non-bankruptcy court action is removed to bankruptcy court. The trustee should not have to expend resources to remove the action to begin with. Nor should the trustee have to file a motion to dismiss in the non-bankruptcy forum, educating that court about the Barton doctrine and hoping for the correct result. And what if she is not properly served but the action proceeds anyway, resulting in liability to her which may be overturned later but is

---

[8]  Moreover, the Court finds on a prima facie review of the Complaint that the Complaint does not state legally viable claims against the Trustee because the claims are barred by the applicable statute of limitations (*See* Part III, below).

still in effect for some period of time. What happens if the trustee is unable to remove the action timely? Only by requiring any potential plaintiff to always start in the bankruptcy court, either by filing a Barton motion or filing the action itself in the bankruptcy court, can the process, and trustees, most consistently be protected.

*Id.,* at 853-54.

Judge Starzynski's decision was followed by Judge Carey in *Richardson v. Monaco (In re Summit Metals, Inc.),* 477 B.R. 484 (Bankr. Del. 2012), which also involved a lawsuit that was filed in State court and removed to the bankruptcy court. Judge Carey held: "The *Barton* doctrine is directly applicable to the matter before me; indeed, this situation is precisely what the doctrine seeks to prevent." *Id*., at 498.

The Court agrees with *Herrera* and *Summit Metals*, and rejects the rationale of *Harris*. First, the Court notes that the *McDaniel* case in the Fourth Circuit involved a removed action and the Fourth Circuit did not believe that the problem had "vanished" at all (although the action in *McDaniel* was removed to the District Court and not to the Bankruptcy Court). More importantly, the Court does not see why trustees should be put to a Hobson's choice: either remove the action and lose the protections of the *Barton* doctrine, or remain in State court and take his or her chances. The Court does not believe that the Fourth Circuit and the other Circuit Courts of Appeal in giving such strong endorsements of the *Barton* doctrine intended it to be circumscribed by the procedural posture of the case.

The Court holds that the *Barton* doctrine continues to apply in a removed action.

*B.   Did Stern v. Marshall Revoke the Barton Doctrine?*

PHA argues next that the Supreme Court's decision in *Stern v. Marshall* has effectively revoked the *Barton* doctrine. The Court isn't sure how these two distinct legal principles – *Stern,* which allocated the authority to enter certain, final, money judgments to Article III courts, and *Barton*, which protects estate professionals – are interrelated. It's as though PHA is calling for a

18

30-second time out in a baseball game. The confusion in mixing these two distinct doctrines is exacerbated by PHA's argument: "*Stern* did not involve the *Barton* doctrine, so there was no reason for the Supreme Court to address the application of the *Barton* [doctrine] in *Stern*." Docket No. 30, Plaintiff's Opposition, p. 20. How the Supreme Court's failure to mention *Barton* in its decision in *Stern* results in a *sub silentio* overruling of *Barton* is unknown to the Court.

The Fifth Circuit rejected this argument in *Villegas v. Schmidt*, 788 F.3d 156 (5th Cir. 2015). The *Villegas* case involved a suit for gross negligence and breach of fiduciary duty against a Trustee for the Trustee's alleged failure to pursue litigation against a third party, Nationwide Insurance, much like this case. The Fifth Circuit rejected the Plaintiffs' "limitation by implication" argument, and held that "a party must continue to file with the relevant bankruptcy court for permission to proceed with a claim against the trustee." *Id*., at 158.[9]

The Court agrees with the Fifth Circuit's decision in *Villegas*, that *Stern* did not implicitly revoke the *Barton* doctrine.

### C. Is the Trustee Barred from Raising the Barton Doctrine by Judicial Estoppel?

PHA asserts that the Trustee is judicially estopped from raising the *Barton* doctrine. The Barton doctrine is one of subject matter jurisdiction, and PHA points to the Trustee's Notice of Removal in this adversary proceeding, which stated that this Court has jurisdiction under 28 U.S.C. § 1334(b) (alleging that the action is "related to" PHA's bankruptcy case), and 28 U.S.C. § 1441(a) because there is complete diversity of citizenship between the parties. Adv. Docket No. 1, ¶ 8.

---

[9]  The Fifth Circuit later distinguished its holding in *Villegas* in *Carroll v. Abide*, 788 F.3d 502 (5th Cir. 2015), in which it held that *Barton* did not preclude a lawsuit against the Trustee in the District Court for actions taken by the Trustee pursuant to the District Court's Order allowing a search and seizure of the Debtor's property. The Fifth Circuit noted that its decision in *Carroll* "is not in conflict with *Villegas*." *Id*., at 507. There is also no mention of the *Stern* argument in *Carroll*.

Judicial estoppel protects the integrity of the judicial process, and prevents the parties from "'playing fast and loose' with the courts." *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (4th Cir.1982) (quoting *United Va. Bank/Seaboard Nat. v. B.F. Saul Real Estate Inv. Trust,* 641 F.2d 185, 190 (4th Cir. 1981)); *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996). Judicial estoppel requires proof of four elements: (1) the party must be seeking to adopt an inconsistent position from that taken in prior litigation; (2) the position must be one of fact, not of law; (3) the prior inconsistent position must have been accepted by the court; and (4) the party must have "'intentionally misled the court to gain an unfair advantage.'" *W. Insulation, LP v. Moore*, 316 F. App'x. 291, 299 (4th Cir. 2009) (quoting *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007)); *In re Rivera,* 2014 WL 287517, at *4 (Bankr. E.D. Va. Jan. 27, 2014).

The Court finds first that the Trustee's jurisdictional allegations in his Notice of Removal are statements of law, not of fact. More importantly, the Court finds that the Trustee has not intentionally mislead the Court. PHA's argument proves too much. If the Trustee were estopped by asserting jurisdiction in this Court, then Trustees could never remove cases and claim *Barton* doctrine protection (much like PHA's argument that Trustees lose the protection of *Barton* when they remove actions to the Bankruptcy Court, which the Court rejected above).

The Court finds that the Trustee is not estopped from reliance on the *Barton* doctrine.

### D. PHA's Lawsuit Does Not Come Within the "Carrying On Business" Exception of 28 U.S.C. § 959(a).

PHA next argues that the "carrying on business" language of Section 959(a) protects it from *Barton* doctrine review in this case.

Section 959(a) of Title 28 provides as follows:

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, *with respect to any of their acts or transactions in carrying on business connected with such property.* Such actions shall be

20

subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

28 U.S.C. § 959(a).

The Courts agree that Section 959(a) has not done away with *Barton* and that the carrying on business exception is more limited in scope than PHA would have it. *In re VistaCare Group, LLC,* 678 F.3d 218 (3rd Cir. 2012) ("we believe that had Congress intended to abrogate *Barton* in its entirety, it would have done so explicitly"); *In re Crown Vantage, Inc*., 421 F.3d 963, 971-72 (9th Cir. 2005) ("By its terms, this limited exception applies only if the trustee or other officer is actually operating the business, and only to 'acts or transactions in conducting the debtor's business in the ordinary sense of the words or in pursuing that business as an operating enterprise'"), citing *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004) ("actions taken in the mere continuous administration of property under order of the court do not constitute an 'act' or 'transaction' in carrying on business connected with the estate"); *Carter v. Rodgers,* 220 F.3d 1249, 1252 (11th Cir. 2000) ("[t]he 'carrying on business' exception in section 959(a) is intended to 'permit actions redressing torts committed in furtherance of the debtor's business, such as the common situation of a negligence claim in a slip and fall case where a bankruptcy trustee, for example, conducted a retail store.'")

The Court finds, first, consistent with the above cases, that the Section 959(a) was not intended to do away with the *Barton* doctrine. Second, the Court finds that the statutory exception is not applicable in this case. The Plaintiff's claims do not involve the ordinary operation of the properties, such as a slip and fall case. Rather, the Plaintiff's claims involve the sale of the properties and the payment in full of Wells Fargo's secured claims, for which the Trustee filed Motions that were granted by the Court. The Debtor was in the business of operating commercial shopping centers, not buying and selling properties in the ordinary course

21

of its business. The sale of the two properties, and the payment of Wells Fargo's secured claims, cannot be described as the ordinary, day to day activities of the business.

The Court finds that Section 959(a) did not permit the filing of PHA's Sleeper Suit, nor the filing of this action.

### E.  The Fact that the Case Was Closed is Irrelevant.

PHA argues next that the Barton doctrine is inapplicable because its bankruptcy case was closed when it filed its lawsuits against the Trustee. This argument was rejected by the Seventh Circuit in *In re Linton,* 136 F.3d 544 (7th Cir. 1998). The *Linton* case was cited by the Fourth Circuit in *McDaniel*. In fact, the Fourth Circuit adopted *Linton's* rationale that, if lawsuits against Trustees were allowed without any supervision:

> trusteeship would become a more irksome duty, and so it would be harder for courts to find competent people to appoint as trustees. Trustees would have to pay higher malpractice premiums, and this would make the administration of the bankruptcy laws more expensive (and the expense of bankruptcy is already a source of considerable concern). The doctrine also enables bankruptcy courts to monitor the work of the trustees they have appointed so that courts may be fully informed when they make future appointments.

*McDaniel*, 668 F.3d, at 157, citing *Linton*, 136 F.3d, at 545.

The concerns enunciated by *McDaniel* and *Linton* do not go away when the case is closed. If anything, the risk of lawsuits against Trustees is magnified once the case is closed and creditors realize that they aren't going to receive anything, or they will receive much less than they are owed. If PHA's position were adopted, creditors could simply await the closing of bankruptcy cases to sue Trustees, thereby negating the purpose of *Barton* almost entirely.

The Court finds that the fact that the case was closed when PHA filed its lawsuit is irrelevant to the application of the *Barton* doctrine.

F.  *The Fact that the U.S. Trustee Appointed the Trustee is Irrelevant.*

Finally, PHA argues that the Court did not appoint the Trustee at all; rather, PHA argues, the U.S. Trustee appointed the Trustee. This is surely the weakest of all of PHA's arguments against the *Barton* doctrine. Section 1104(a) of the Code provides that on request of a party in interest, including the U.S. Trustee, after notice and a hearing, "the court shall order the appointment of a trustee" for cause. 11 U.S.C. § 1104(a). That is what occurred in this case – the Court ordered the appointment of a Trustee. Docket No. 184.

Bankruptcy Rule 2007.1(c) provides for the entry of an Order approving the appointment of a Chapter 11 trustee. In this case, the U.S. Trustee filed an Appointment of Mr. Albert as Chapter 11 Trustee and a Motion to Approve his appointment. Docket Nos. 195, 196. The Court granted the Motion to Approve on November 23, 2011. Docket No. 199.

The Court rejects PHA's argument for two reasons. First, the Bankruptcy Code was enacted in 1978. All of the Courts of Appeal that have considered the *Barton* doctrine since the enactment of the Code have endorsed it, including the Fourth Circuit in *McDaniel.* There are no cases supporting PHA's position.

Second, even though the U.S. Trustee names the Trustee, the Court approves the appointment and, more importantly, the Court retains supervisory powers over the Trustee throughout the case. In fact, the Court has the power to remove a Trustee for malfeasance at any time in the case. As *McDaniel* plainly stated, the purpose of the *Barton* doctrine is to protect the supervisory powers of the Court over professionals employed by the estate. This central concern of *Barton* did not disappear in 1978, and remains a vital concern today.

G. *The Court's Conclusion on the Barton Doctrine.*

The Court finds that the filing of PHA's Sleeper Suit and this action violated the *Barton* Doctrine. Accordingly, the Court recommends that this action be dismissed.

**III.    The Action is Barred by the Applicable Statute of Limitations.**

The parties agree that both of PHA's claims (negligence and breach of fiduciary duty) are governed by the two-year statute of limitations of Virginia Code § 8.01-248. The Court accepts PHA's premise, for purposes of this Motion, that it was hobbled by the appointment of the Trustee and that it could not have filed the action against the Trustee during the pendency of its bankruptcy case. The case was dismissed on December 7, 2012. It was closed administratively on December 27, 2012. PHA filed its Sleeper Suit on December 29, 2014. December 27, 2014, was a Saturday. If December 27, 2012, is the correct date to consider for the statute to begin to run, then under Virginia law the expiration of the statute would have carried over to Monday, December 29th. Va. Code § 1-13.3:1. The issue is whether the date of the dismissal of the bankruptcy case, or the closing of the case, controls for purposes of accrual of the two-year statute. If the closing date is the correct date, then the Sleeper Suit (and, therefore, this lawsuit) was timely. If the date of dismissal controls, then the Sleeper Suit and this action are time-barred.

The Court begins with the plain language of the statute, here Section 349(b), which provides:

> Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> (1) reinstates—
>
> (A)   any proceeding or custodianship superseded under section 543 of this title;
>
> (B)   any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C)   any lien voided under section 506(d) of this title;

(2)   vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3)   *revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.*

11 U.S.C. § 349(b) (emphasis added). The Fourth Circuit recently reiterated the principal that "[i]f the statute's language is plain, that is 'where the inquiry should end.'" *Dep't of Soc. Servs., Div. of Child Support Enf't v. Webb*, 908 F.3d 941, 946 (4th Cir. 2018), quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989).

"The legislative history to the Bankruptcy Code indicates that the drafters intended for this provision to 'undo the bankruptcy case, as far as practicable, and restore all property rights to the position in which they were found at the commencement of the case.'" *In re Moore,* 2006 WL 4468609 (Bankr D. Md. 2006), quoting *In re Weston*, 110 B.R. 452 (E.D.Cal.1989). The closing of a bankruptcy estate, on the other hand, is considered to be ministerial in nature and not determinative of any of the parties' substantive rights. *In re Bosak*, 242 B.R. 400, 403 (Bankr. N.D. Ohio 1999). *See also In re Williams,* 363 B.R. 786, 788 (Bankr. E.D. Va. 2006) ("Courts have routinely equated 'pending' with 'not dismissed….' Such application of 'pending' in other contexts suggests that the dismissal of the case should be the relative measuring event [for purposes of Section 362(c)] and not the date the case is administratively closed.")

PHA relies on the Order of Dismissal in its case, which provided that "upon the later to occur of: (i) the dismissing and closing of the Bankruptcy Case or (ii) distribution of all of the property of the Estate, the Trustee will be automatically discharged and released from any further fiduciary duty to the Debtor or creditors of the Estate, including but not limited to any reporting requirements." Docket No. 389, p. 6. This provision, however, only defined when the Trustee

25

would be free of any continuing fiduciary duties to the Debtor and the creditors. It did not dictate

the accrual date for causes of action revested in PHA as of the date of the dismissal of the case.

The Court finds, therefore, that the relevant date for accrual is the date that the

bankruptcy case was dismissed. As of December 7, 2012, the estate's causes of action against the

Trustee, if any, revested in the Debtor.

The Court will recommend the dismissal of this action on the basis that it is barred by the

two-year statute of limitations.

### IV.    The Court Declines to Rule on the Defendant's Alternative Grounds for Dismissal.

Finally, the Court declines to rule on the Trustee's alternative grounds for dismissal –

Trustee immunity, res judicata, judicial estoppel and the exercise of the Trustee's business

judgment. The Court, having recommended complete relief in favor of the Trustee, declines in

the exercise of its discretion, to address these alternative grounds at this juncture in the case.

### Conclusion

It is therefore **ORDERED**:

1.      The Court recommends that the Plaintiff's Complaint be dismissed for lack of

compliance with the Barton Doctrine.

2.      The Court further recommends that the Plaintiff's Complaint be dismissed as

time-barred under the applicable statute of limitations.

3.      The Clerk will mail copies of this Report and Recommendation, or will provide

cm-ecf notice of its entry, to the parties below.

## Right to Object

The Plaintiff is advised that Bankruptcy Rule 9033(b) provides as follows:

**Objections: Time for Filing. Within 14 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection. A party may respond to another party's objections within 14 days after being served with a copy thereof. A party objecting to the bankruptcy judge's proposed findings or conclusions shall arrange promptly for the transcription of the record, or such portions of it as all parties may agree upon or the bankruptcy judge deems sufficient, unless the district judge otherwise directs.**

Date: Dec 21 2018                          /s/ Brian F. Kenney
                                           Brian F. Kenney
Alexandria, Virginia                       United States Bankruptcy Judge

Copies to:                                 Entered on Docket: Dec 21 2018

John S. Edwards, Esquire
Law Office of John S. Edwards
P.O. Box 1179
Roanoke, VA 24006
*Counsel for Plaintiff*

Stephen E. Leach, Esquire
Hirschler Fleischer, PC
8270 Greensboro Drive, Suite 700
Tysons, VA 22102
*Counsel for Defendant*